**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-cr-743** |
| | : | |
| **THOMAS PAUL CONOVER** | : | |

<u>**SENTENCING MEMORANDUM**</u>

Thomas Paul Conover, by and through undersigned counsel, respectfully submits his Sentencing Memorandum for consideration by this Honorable Court.  The sentencing hearing is scheduled to commence on April 8, 20202. For all reasons stated herein, Mr. Conover respectfully requests that the Court sentence him to a fine, or in the alternative a term of probation not to exceed one (1) year, and order payment of restitution in the amount of $500 with the mandatory $10 special assessment fee.

<u>**INTRODUCTION**</u>

Mr. Conover is 53 years old, born in 1968.  Mr. Conover has lived in Texas all his life and started his business in 1993, called "Dent Tex," an auto dent removal company, which he owns and operates with his wife.   Mr. Conover is a father to three children and currently is undergoing treatment for cancer.

<u>**STATEMENT OF THE CASE**</u>

1.  Mr. Conover decided to go to Washington D.C. after some of his friends suggested it. Mr. Conover traveled from Texas to Washington, D.C. and stayed at a hotel with a friend. Mr. Conover went to the Ellipse to see the President speak. There was a very large crowd at the rally, which later started moving towards the Capitol. Mr. Conover eventually made his way over to the Capitol building.

2. Mr. Conover is before the Court because he entered the Capitol on January 6, 2021. Although he entered the Capitol, he did not engage in any acts of violence, destruction, or vandalism.  During his time in the Capitol building, Mr. Conover never engaged in acts of violence or destruction.  The evidence produced in discovery shows Mr. Conover did not participate in any physical altercations with law enforcement or any other individual.  Mr. Conover used his phone to capture events inside the Capitol and at no time did Mr. Conover attempt to destroy or discard the contents of his phone. According to data derived from his cellphone, Mr. Conover entered the Capitol building through the East Rotunda Door at approximately 2:56 pm.   He exited the Capitol building through the same door at approximately 3:18 pm.

3. On December 8, 2021, Mr. Conover's arrest warrant was executed in Texas.  At that time, Mr. Conover exercised his right to remain silent when Federal Bureau of Investigations ("FBI") Agents attempted to conduct an interview.  Mr. Conover was brought before the US District Court for the Northern District of Texas and was released on his personal recognizance.

4. On December 16, 2021, Mr. Conover appeared before Magistrate Judge Zia M. Faruqui for an initial appearance and was released on his personal recognizance.  Mr. Conover has been compliant with all conditions of pretrial release throughout.

5. On January 7, 2022, *at the earliest opportunity to do so*, Mr. Conover plead guilty before this Honorable Court to Count 4 of the Indictment: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

6. On March 8, 2022, Mr. Conover voluntarily interviewed with the January 6 House Committee Session.

## MEMORANDUM OF LAW

### I.   Statutory Penalties

The defendant is to be sentenced on a single count of 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000.00.  As discussed below, the defendant must also pay restitution under the terms of his plea agreement.  *See* 18 U.S.C. §3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply.  18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### II.   Relevant 18 U.S.C. § 3553(a) Factors

18 U.S.C. § 3553(a) mandates that a court "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals.  In imposing a sentence that is "sufficient, but not greater than necessary," the Court should look to the statutory factors listed under Section 3553.  Because this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply, and therefore § 3553(a)(4) and (5) are not discussed.

### A.   § 3553(a)(1).  The Nature and Circumstances of the Offense

What happened at the Capitol was horrible.  There is no dispute here.  The violence against Capitol Police officers, damaging the Capitol grounds, and invading one of the most sacred places of our Democracy, by many who wanted to overthrow a legal and valid election is horrible. Entering the Capitol was wrong, and Mr. Conover knows it was wrong.  However, Mr. Conover did not engage in any violence; did not break anything or break or remove any barrier; did not confront or fight with police[1]; did not possess or carry any weapons; and did not post all over social

---

[1] The government assumes that Mr. Conover "joined in a failed effort of rioters to push their way through law enforcement officers that were preventing rioters from penetrating deeper into the Capitol through the west door of the Great Rotunda [and] while law enforcement officers attempted to push Conover and other rioters out of the Great Rotunda, Conover stood his ground and did not immediately comply with commands to leave the building."

3

media anything after the event of January 6, 2021[2], unfolded.  He did not enter or attempt to enter any offices; did not enter the House or Senate floor; did not take any "souvenirs" or engage in conduct exhibited on news accounts or in other Capitol riot cases.  Mr. Conover was not and is not affiliated with any organized or extremist group – *e.g.*, the Proud Boys, militiamen, white supremacists, anti-maskers, etc. – and was not wearing Make America Great Again ("MAGA") gear.  He was unable to see the full extent of the horrible events of the day because of the position he was in by the Rotunda Doors. It was not until later in the day, while in his hotel, that he saw the news accounts of the day and was ashamed for being there.

Mr. Conover's intent for traveling to D.C. was to have a good time with his friends – stay at a hotel, have some drinks, and enjoy their time. Mr. Conover did not learn until later, on January 6, 2021, that there was a joint session to certify the vote count of the Electoral College. Mr. Conover finds it absurd to think that the election was "stolen" from President Trump and finds it absurd to think that the election could be "overturned." Mr. Conover did not share the same mindset as many January 6 defendants – he was protesting Congress action and had no ill-intent when coming to D.C.

Mr. Conover has come to regret his actions.  His remorse and the horrors of that day that he first saw at his hotel room after the fact lead Mr. Conover to accept responsibility for his actions before this Honorable Court at the earliest opportunity.  It is also why Mr. Conover volunteered to

---

GOVERNMENT'S SENTENCING MEMORANDUM, at 2. These are mere assumptions. Mr. Conover joins a group of individuals facing a police line with the intent to video tape the events, as he has been doing the whole time inside the Capitol, rather than with the intent to push through a police line to access other areas of the Capitol. Furthermore, Mr. Conover does not stand his ground but rather continues staring at his cell phone that is recording the events. There was no intent to "stand ground" – merely a delayed realization that he needed to leave as he was too busy looking at his phone capturing the events.

[2] Mr. Conover has made some social media posts prior to and on January 6, 2021, which he acknowledges was a poor decision and not "funny" as he originally thought they would be. Mr. Conover has not, unlike many other defendants, continued to post about January 6 after the fact as he saw the horrors of that day later that evening at his hotel and over the next several days and was ashamed.

speak to the January 6 House Committee and provide them with any information he could provide to further their investigation.  Mr. Conover is extremely remorseful for getting carried away and entering the Capitol building, knowing he did not have permission.

### B.  § 3553(a)(1).  The History and Characteristics of Mr. Conover

#### i.  *Family Life*

Mr. Conover is a life-long resident of Texas, where his family also resides.  Mr. Conover grew up in a middle-class home and had, and continues to have, a good relationship with his mother and siblings. He was well provided for and grew up feeling loved and supported by his family, including his father who passed away when Mr. Conover was only five (5) years old from cancer. There were no problems with alcohol or drug abuse in the home.

Mr. Conover is a devoted family man with the strong support of his entire family, colleagues, and friends. Mr. Conover married his wife in 1991. She is a homemaker, and the co-owner of Dent Tex. Mrs. Conover suffers from borderline personality disorder and bipolar disorder and is participating in a form of psychotherapy. Mr. Conover has two adult children with his wife and another child from a separate relation. All his children are provided for, and Mr. Conover is proud of their love and support.

#### ii.  *Educational and Professional Background*

Mr. Conover graduated from L.D. Bell High School in Hurst, Texas in 1986 and then attended Tarrant County College in Fort Worth, Texas for a year. Mr. Conover withdrew from school to begin working. He worked at car dealerships and auto body repair shops and received on-the-job training which allowed him to open his own business in 1993 called "Dent Tex." Mr. Conover has since been working for Dent Tex, as its owner, founder, operator, and employee. Mr. Conover's business revolves around the weather as he mainly performs hail damage repair to

vehicles other than fixing auto dents. Mr. Conover has consistently traveled to Australia the months of January to March/April for his business.

### iii.   Medical Condition

Mr. Conover is not in good health. He is currently under the care of a physician for treatment of chronic myeloid leukemia (cancer) and hypothyroidism, which were diagnosed in November 2021, shortly before his arrest. Mr. Conover is currently taking chemotherapy medication and testosterone while the doctors await to see if more severe treatment will be needed. Mr. Conover is facing a potential downward spiral if the current treatment fails, which would start a timer on Mr. Conover's life. Mr. Conover further suffered a recent spiral fracture which he takes a string of medications for.

Mr. Conover does not suffer from mental and/or emotional health problems but was prescribed Alprazolam for anxiety resulting from his cancer diagnosis. Mr. Conover further does not have any substance abuse problems.

### iv.   Criminal History

Mr. Conover agrees with the Criminal History reflected in the PSR on pages 6 – 7, paragraphs 27 – 33, which only reflects minor traffic infractions.  Mr. Conover has no criminal history and has been an exemplary citizen.

### C.  § 3553(a)(2).  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment for the Offense, and to Afford Adequate Deterrence to Criminal Conduct

In considering this factor, it is important to distinguish between the aggregate conduct of all the protesters and the conduct of Mr. Conover.  There was a wide variety of conduct that occurred on January 6, 2021, ranging from peaceful, non-criminal protest involving pure First-Amendment speech to acts of violence against police officers.  The riot was a serious wrong;

however, Mr. Conover's conduct consisted only of entering the Capitol building without permission and making several social media posts prior to and on January 6, 2021 (and none afterwards). It is essential to the goals of sentencing that those who beat law enforcement officers, engaged in violence, came to the Capitol building to initiate violence and destruction, broke doors and windows, scaled the walls, and vandalized the Capitol, be prosecuted and punished more harshly. As of March 2022, the Department of Justice has prosecuted or is prosecuting more than 800 defendants. It does not serve the goals of 18 U.S.C. § 3553(a) for the law to treat all the protesters alike, in effect punishing Mr. Conover for his actions and those who behaved violently.

By the time Mr. Conover is sentenced, he would have spent four (4) months on pretrial supervision, abiding by all conditions of his release on personal recognizance. Mr. Conover has agreed to pay $500 in restitution and the $10 special assessment fee and is prepared to do so on the day of sentencing, or as the Court otherwise directs. As this is Mr. Conover's first and only criminal offense, a sentence of a fine, or alternatively probation of not more than one (1) years, would "reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense and afford adequate deterrence to criminal conduct." § 3553(a)(2).

### D. § 3553(a)(2). The Need for the Sentence Imposed to Protect the Public from Further Crimes by Mr. Conover

As this is Mr. Conover's first and only criminal offense, a probationary sentence would protect the public from any potential future crimes by Mr. Conover.[3] Nothing in his background indicates that he is likely to commit any criminal offenses in the future. Mr. Conover plead guilty at the earliest opportunity to do so, demonstrating his recognition of his culpability and remorse

---

[3] *See also*, SENTENCING RECOMMENDATION, Docket Document 22 ("With respect to deterrence, community safety (incapacitation), and punishment, Mr. Conover has been in compliance with his pretrial supervision and the terms of his release. He does not appear to present a danger to the community and goals of sentencing may be accomplished through a noncustodial sentence of probation supervision which would enable him to continue with his needed medical treatment, operate his business, and provide for his family.")

for his actions.  Mr. Conover knows that his actions resulting in this prosecution have shed a bad light on him, his family, and his business and thus is highly motivated to avoid such conduct in the future. Furthermore, with his cancer diagnosis, Mr. Conover knows that his time may be even more limited than he originally anticipated and thus is highly motivated to abide by all laws to enjoy the time he has left doing what he loves with his loved ones by his side.

### E.  § 3553(a)(2).  The Need for the Sentence Imposed to Provide Mr. Conover with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Mr. Conover's history does not support the need for such services.[4]

### F.  § 3553(a)(3).  The Kinds of Sentences Available

The maximum term of imprisonment is six (6) months for this Class B Misdemeanor. Pursuant to 18 USC § 19 and 3583(b)(3), this offense of conviction meets the definition of a "petty offense," consequently, a term of supervised release is not applicable.  Pursuant to 18 USC § 3561(c)(2), Mr. Conover is eligible for up to five (5) years of probation.  In addition to the mandatory and discretionary conditions of supervision, 18 USC § 3563(a) and (b), the Court may impose other conditions as they relate to the nature and circumstances of the offense and the history and characteristics of Mr. Conover.  18 USC § 3553(a)(1).  Pursuant to 18 USC § 3571(b), the maximum fine imposed is $5,000.  Lastly, pursuant to 18 USC § 3663A, restitution in the total amount of $500 shall be ordered in this case.

### G.  § 3553(a)(6).  The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have been Found Guilty of Similar Conduct

The events of January 6, 2021, resulted in the prosecution of over 800 defendants for various offenses.  With respect to those who plead guilty to Parading, Demonstrating, or Picketing

---

[4] *Id.* ("Rehabilitation does not appear to be a particular concern for this defendant.")

in a Capitol Building, this Court has sentenced 101 individuals as of March 2022, where approximately one third were sentenced to incarceration and the remaining two thirds were sentenced to a probationary period.[5] Reviewing the cases in which a term of imprisonment was imposed, obvious facts distinguish them from Mr. Conover.[6] Mr. Conover has mitigating factors that warrant a fine or probationary sentence, like the other 60+ individuals sentenced to date for this offense.  Sentencing Mr. Conover to a fine, or alternatively a term of probation, will avoid unwarranted sentence disparities.

### H.  § 3553(a)(7).  The Need to Provide Restitution to any Victims of the Offense

The government and Mr. Conover have agreed that $500 restitution is appropriate in Mr. Conover's case.  The government has requested $500 restitution in several cases related to January 6, 2021.

### III.   Sentence Recommendation

The United States Probation Office ("USPO"), through Probation Officer Crystal Lustig, does not recommend a sentence of imprisonment.[7] The recommendations are for a term of probation only.[8] The government's recommendations are: 30 days incarceration, 3 years of probation, 60 hours of community service, and $500 in restitution.[9] The government's recommendation go against the USPO's recommendations and would result in "unwarranted

---

[5] See Docket Document 23-1.
[6] See e.g In 21-cr-54, Mr. Mazzocco entered a conference room while in the Capitol and posted a selfie with the caption "The capital [sic] is ours!". In 21-cr-266, Ms. Miller climbed through a broken window to enter the Capitol. In 21-cr-166, Mr. Reeder walked into several rooms, hallways, and balconies and told officers to retreat. In 21-cr-112, Mr. Mish heard the fatal shooting of Ashli Babbitt. In 21-cr-243, Mr. Lolos climbed through a broken window to get into the building. In 21-cr-254, Mr. Scavo was at the front line where officers were pushed and assaulted before rioters breached into the building. In 21-cr-506, Mr. Ericson entered the United States House of Representatives Speaker's Conference Room and took a photograph of himself in the room and had someone photograph him seated with his feet on a conference table.
[7] See, SENTENCING RECOMMENDATION, Docket Document 21.
[8] Id.
[9] See, Government's Sentencing Memorandum, Docket Document 23.

sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). Reviewing the cases in which a term of imprisonment was not imposed despite the government's recommendations, there are obvious similarities to Mr. Conover and/or clear additional mitigation factors supporting Mr. Conover's probationary sentence or a fine compared to the other defendants.[10]

Accordingly, Mr. Conover respectfully requests that the Court sentence him to a fine[11], or alternatively a term of probation not to exceed one (1) year, and order payment of restitution in the amount of $500 with the mandatory $10 special assessment fee.

Regarding special/mandatory conditions of probation, if probation rather than a fine is imposed by this Honorable Court, Mr. Conover respectfully requests that (i) the Court suspends drug testing conditions, (ii) allow Mr. Conover limited use and possession of a firearm, and (iii) allow Mr. Conover to travel to Australia to conduct his business.

### i.  Mandatory Drug Testing

The Violent Crime Control and Law Enforcement Act of 1994 requires an individual under supervision, whose offense occurred after September 13, 1994, refrain from the unlawful use of a controlled substance; submit to one drug test within fifteen days of the commencement of supervision; and two additional periodic drug tests. The condition for mandatory drug testing may

---

[10] *See e.g.,*: In 21-cr-115, Mr. Alvear was sentenced to two years of probation despite the government's recommendation of 3 months of incarceration (Mr. Alvear was smoking pot inside the Capitol and see passing it around to others in the Capitol). In 21-cr-355, Ms. Lori was sentenced to 5 years of probation despite the government's recommendation of 30 days incarceration (Ms. Lori saw broken glass when she entered, the alarms were blaring when she entered, and she later told a local news outlet that her actions were "justified" and that she would "do this all over again tomorrow"). In 21-cr-204, Mr. Griffith was sentenced to 3 months home detention and 36 months of probation despite the government's recommendation of 3 months of incarceration (Mr. Griffith observed members of the crowd attacking law enforcement repeatedly before he entered the building). In 21-cr-344, Mr. Nelson was sentenced to 24 months of probation despite the government's recommendation of 14 days incarceration (Mr. Nelson noticed civilians on scaffoldings and police shooting pepper balls before entering the building). In 21-cr-94, Mr. Mariotto was sentenced to 36 months of probation despite the government's recommendations of 4 months of incarceration (Mr. Maritotto entered the Senate Chamber).
[11] In 21-cr-386, Mr. Blauser was sentenced to a fine and restitution only.

be ameliorated or suspended by the Court if reliable sentencing information indicates a low risk of future substance abuse by the defendant. 18 USC §§3563(a)(5) and 3583(d).

Mr. Conover is receiving treatment for his cancer diagnosis. He has many doctor visits, is in a trial period with the chemotherapy medication to see how his body reacts and is prescribed a wide range of different medications for other medical conditions. Part of Mr. Conover's doctor visits include a "work-up" of Mr. Conover, which includes blood work. Ordering drug testing as a condition of probation is unnecessary in light of his declining health and there is nothing in the sentencing information that would lead the Court to find risk of future substance abuse.

*ii.   Own, Possess, or have access to a Firearm*

Mr. Conover bred his dog, Duchess, with a black lab, Fleet, who is an American Kennel Club ("AKC") champion to get a well-bread hunting and field trial litter. The puppies were born on October 27, 2020. Mr. Conover kept one of the elven puppies, with his son keeping one as well. In June 2021, the two pups went for basic training at Ten-More Kennels in El Dorado, Texas for three (3) months. The purpose of this training is to find out whether the dog has what it takes for field trials. The two pups are actively training for AKC Hunt Tests and Field Trials. During the hunt trials, shotguns are used to shoot (dead) birds for mock-up hunting scenarios and to make the pups comfortable around loud noises. Shotguns are also used to hunt – Mr. Conover used a Remington and Benelli Shotgun, which are stored at his mother's house pending disposition of this case.

The dogs have missed some training due to Mr. Conover's inability to use or possess any type of firearm as this case is pending. Since there are several other trials coming up, Mr. Conover respectfully requests that if sentenced to probation rather than a fine, he be allowed to use his shotgun for purposes of the AKC test and trials – if his health allows. Mr. Conover would not use

or possess any other type of firearm (only the shotgun) for purposes of field trails and hunting tests, and the shotgun would be stored at his mother's house at all other times. Mr. Conover has worked very hard to make the dogs AKC champions and pleads the Court to allow Mr. Conover limited use and possession of the shotgun for those purposes only.

### iii.  Travel to Australia

Mr. Conover's work revolves around the weather as auto hail repair is seasonal. In the state of Texas, it can be a hit or miss whether hail will fall a particular year. The uncertainty of the weather has forced Mr. Conover to look for alternative work to ensure that his livelihood will not be jeopardized at the hands of the weather.

Mr. Conover has worked overseas for many years now. He has worked in Spain, Canada, Germany, Holland, and other parts of Europe. For the last ten (10) to twelve (12) years, Mr. Conover has worked seasonally in Australia for a company named "Smart Repair." Whenever there is a major hailstorm in Australia (usually early in the year), Smart Repair contacts Mr. Conover, who holds a license for hail repair in that country, to travel and work as a Contractor for the company.[12] Mr. Conover is one of the first technicians they call from abroad. Mr. Conover's duties as a Contractor to Smart Repair include repair, customer services, quality control, and manager of some of their locations. Although hailstorms usually happen early in the year, because the weather is unpredictable, Mr. Conover can be called at any time by Smart Repair for help. When Mr. Conover gets the call, he has limited time to get ready and get on a flight. Mr. Conover usually stays in Australia for approximately three (3) months before returning home. Since COVID-19, Mr. Conover's business in Texas has taken a hit. Australia however has recently resumed normal, pre-Covid, activities and Smart Repair needs Mr. Conover. Therefore, if Mr.

---

[12] *See* Ex. 1 (Letter to the Court by Mr. Cross, CEO of Smart Repair).

Conover is sentenced to probation rather than a fine, he respectfully requests that this Honorable Court allow him to travel to Australia (will need his passport back) for purposes of work, if his health so allows. Mr. Conover requests that the only condition be that he alert (rather than seek approval) his probation officer prior to taking a flight and after returning to the U.S. Mr. Conover's livelihood depends on his travels to Australia.

### **CONCLUSION**

Mr. Conover recognizes that he should not have been in the Capitol on January 6 and that he must be punished for that conduct. However, his behavior on that day does not deserve a prison sentence considering that he did not engage in violence or destruction of property, has been extremely cooperative, and has great and sincere remorse. His conduct should not result in incarceration and personal ruin.

Mr. Conover respectfully requests that after considering the § 3553(a) factors, the Court impose a sentence of a fine and restitution. Considering the relevant case law and pursuant to 18 U.S.C. § 3553(a), such a sentence is sufficient but not greater than necessary.

Date: April 1, 2022                                        Respectfully submitted,

Camille Wagner
(DC Bar No. 1659390)
1629 K Street NW, Ste 300
Washington DC 20006
(202)630-8812
law@myattorneywagner.com
*Counsel for Mr. Conover*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of April, 2022, I caused a true and correct copy of the foregoing Defendant's Sentencing Memorandum to be delivered via ECF to the Parties in this matter.

/s/ Camille Wagner