**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-743 (CRC)** |
| | : | |
| **THOMAS PAUL CONOVER,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
### MOTION FOR EARLY TERMINATION OF PROBATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Thomas Paul Conover's Supplemental Motion for Early Termination of Probation. ECF No. 45. In support of this opposition, the government relies on the following factual and legal authorities, as well as any that may be offered at a hearing on this motion.

Prior to January 6, 2021, Conover encouraged others via social media to "join the mob" and warned that a "shit storm is coming." On January 6, 2021, while members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Conover joined the mob that had gathered on the restricted grounds of the U.S. Capitol and pushed his way through violent rioters and an overwhelmed police line at the East Rotunda door to gain access to the Capitol. While he was in the Great Rotunda of the Capitol, Conover stated that he was "proud of the people" who were there with him and that he was "glad [he] came."

Conover, still in the Grand Rotunda, joined in a failed effort of rioters to push their way through law enforcement officers who were preventing rioters from penetrating deeper into the Capitol through the west door of the Great Rotunda. Then, when police officers attempted to push Conover and other rioters out of the Great Rotunda, Conover stood his ground and did not immediately comply with commands to leave the building.

After leaving the Capitol, Conover continued to make light of the violent events of the day by holding up an empty beer can and filmed a selfie style video stating, "I don't always storm the Capitol of the United States of America, but when I do, I prefer Coors Light." ECF No. 23, pp. 4-16. The government offered Conover the opportunity to plead guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building in full satisfaction of the offenses charged on the Information. ECF No. 9. On April 22, 2022, then-District Judge Florence Y. Pan, sentenced Conover to a three-year term of probation with the special condition that Conover spend thirty days in a residential reentry center, complete 60 hours of community service, pay a $2,500 fine, and pay $500 in restitution. ECF No. 33.

Conover has satisfied the special condition of probation to spend 30 days in a residential reentry center. Conover's current U.S. Probation Officer has also confirmed to the government that Conover has paid his fine, restitution, and the special assessment fee. His U.S. Probation Officer has indicated that his current classification is low risk, and that to date he has been compliant with the terms of his probation. Compliance with Court Orders and specifically the terms of his sentence and conditions of his probation is what is expected of Conover.

On December 7, 2023, Conover asked this Court to terminate his term of probation, citing three factors: (1) his passport has not been returned, (2) he has been compliant with all the standard conditions and completed all the special conditions of probation, and (3) his supervision has hindered him from traveling for work. ECF No. 41, p. 2. On January 9, 2024, this Court,

> amended [Conover's conditions of supervision] to permit Mr. Conover to travel, for documented business purposes only, within the state of Texas as well as within 300 miles of his residence without prior approval. For all other travel, including personal travel outside the judicial district and domestic or international business travel not encompassed by this modification, Mr. Conover is still required to seek and receive advance permission from his probation officer. **All other conditions of supervision remain in place.**

ECF No. 44 (emphasis added).

Now, nearly nine months later, and with only seven months left on his term of probation, Conover *for the first time* uses his alleged inability to train his dogs to renew his request that this Court terminate his three-year term of probation. ECF No. 45, pp. 2-3. The Court should view this request with skepticism based on the terse justifications given for the request and the timing of the request and once again deny Conover's motion for early termination.

This Court should find that mere compliance with the terms of his sentence and begrudging adherence to the conditions of his probation is insufficient to merit early termination. "[A]fter considering the factors set forth in section 3553(a) to the extent that they are applicable" along with "the conduct of the defendant and the interest of justice" (18 U.S.C. § 3564(c)), this Court should once again honor the carefully crafted sentence of Judge Pan and deny Conover's motion for early termination of probation.

## I.   FACTUAL BACKGROUND

The docket for this case is already replete with recitations of Conover's relevant actions prior to, during, and after January 6, 2021. *See* ECF Nos. 1, 1-1 (Criminal Complaint and Statement of Facts); ECF No. 19 (Statement of Offense); ECF No. 23 (Gov't's Sentencing Memorandum); ECF No. 30 (Notice of Amended Filing of Video Exhibits in Support of Gov't's Sentencing Memorandum)[1]; ECF No. 36 (Notice of No Objection to Public Release of Video Exhibits); ECF No. 42 (Gov't's Memorandum in Opposition to Defendant's Motion for Early Termination of Probation); and ECF No. 42, Attachment 1 (Conover's Voluntary Interview with House Select Committee). Since the present motion is supplemental, the government adopts by reference the arguments put forth in its response in opposition to the original motion.

---

[1] Should the Court desire to see the video exhibits prepared by the government for Conover's sentencing, the government will once again make the files available to the Court and defense council through the prescribed and commonly used USAfx filesharing platform.

Conover's supplemental reasons given in support of his request for early termination are equally insufficient to justify further action by this Court. As recognized by the defendant, his original sentence, imposed April 22, 2022, included the specific provision that Conover "not own possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon," with the carve-out that possession of a firearm, specifically a shotgun, was "permitted for the limited use of training and testing dogs." ECF No. 33, pp. 3-4. The Court directed that the "[s]hotgun shall otherwise remain at [Conover's] mother's residence." *Id.* at 4. This carve-out was a specific response to Conover's request for such a carve-out in his sentencing memorandum. ECF No. 24, pp. 11-12. In the memo, Conover references "two pups" that in June 2021 went for a three-month "basic training." *Id.* at 11. Conover also regrets that, "The dogs have missed some training due to Mr. Conover's inability to use or possess any type of firearm as this case is pending." *Id.*

Conover mentions his dogs, Virgil and Maybelline, as a reason for terminating his probation. He includes their picture, and he references (without citing to) a provision of the Texas Penal Code that prohibits him from possessing a firearm while on probation. ECF No. 45, pp. 2-3. Assuming Virgil and Maybelline are the same dogs referred to in his sentencing memo, they are now three years and eleven months old, or according to the American Kennel Club and the American Veterinary Medical Association, his dogs are the equivalent of thirty-four years old in "human" years.[2] The American Kennel Club also recommends generally that "retrieval training" start when a pup is six to seven months old.[3]  Some online resources recommend that gun training begin around that same time.[4]

---

[2] https://www.akc.org/expert-advice/health/how-to-calculate-dog-years-to-human-years/

[3] https://www.akc.org/expert-advice/training/tips-for-hunting-with-your-dog/

[4] *See, ex.,* https://laytonretrievers.com/when-to-start-gun-dog-training/

So why is Conover bringing the dogs, now fully grown, back into the picture at this late stage of his probation? What needs to happen with the dogs over the next seven months that cannot wait until Conover's probation ends in late April 2025? Is there any urgency to this request? If so, why was this not included in his previous request for early termination? Why have no reasonable alternatives been explored? For example, why is it not a possibility for Conover's son to carry out the gun training while his father finishes his term of federal probation that was imposed because of Conover storming the Capitol and participating in an event that disrupted our nation's peaceful transfer of power?

All things considered, this request seems to be less about the dogs and more about Conover. As the Court is aware from the last time Conover asked for early termination, he is already on the lowest classification of supervision—"low risk"—where he is required to check in once a month online and request permission to travel outside the state of Texas or more than 300 miles away from his home. Judge Pan crafted a sentence that included a period of probation that extended through the next election and (potential) transfer of power.  That likely wasn't an accident.  Since this is his first real opportunity to reoffend, it makes sense that his probation should go through at least January 20, 2025.Since Conover is already on the lowest level of supervision offered by the district under whose courtesy supervision he falls, no further change or modification of his conditions is warranted.

## II.   LEGAL AUTHORITIES

Although Conover does not cite to any statute or legal authority in support of his request for early termination, there is a statute, specifically 18 U.S.C. § 3564(c), that addresses the considerations this Court should engage in when such a request is made. Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the

interest of justice." In making this determination, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*; *see also United States v. Hartley*, 34 F.4th 919 (10th Cir. 2022) (district court must make individualized determinations based on applicable statutory criteria before responding to request to modify sentence); *cf. United States v. Ferrell,* 234 F.Supp.3d 61, 63 (D.D.C. 2017) (same holding for considering early termination of probation in felony case).

As many courts have recognized, mere compliance with the conditions of probation does not warrant early termination. Although "extraordinary circumstances . . .  are not necessary for such termination," they "may be sufficient to justify early termination of a term of supervised release." *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020). District courts are entrusted with the discretion on whether to terminate probation or supervised release early consistent with these rules. *See*, *e.g.*, *Folks v. United States*, 733 F. Supp. 2d 649, 652 (M.D.N.C. 2010) (rejecting motion for early termination of supervised release because there was nothing unusual about his case), *citing United States v. McKay*, 352 F.Supp.2d 359, 361 (E.D.N.Y.2005); *accord, United States v. Medina*, 17 F.Supp.2d 245, 247 (S.D.N.Y.1998) (noting that "[w]hile [defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"); *United States v. Weintraub*, 371 F.Supp.2d 164, 167 (D.Conn.2005) ("[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required to all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso*, 241 F.Supp.2d 466, 469 (D.N.J.2003) ("mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early

termination"); *United States v. Hardesty*, Case No. 95–20031–01–JWL, 2002 WL 731705 (D.Kan. Apr. 2, 2002) (rejecting arguments that defendant is "fully rehabilitated" and complied in all respects with post-release requirements and that continued release would serve "no meaningful and useful purpose").

The totality of the 3553(a) factors weigh against Conover's request for early termination.

## III.   ANALYSIS

### A.   Conover Has Not Demonstrated New or Unforeseen Circumstances that Warrant Early Termination of Probation.

Conover's Motion fails to raise any new or unforeseen circumstances that warrant early termination of Judge Pan's sentence that included a 36-month term of probation. Conover offers once again, that, since his conviction, he has complied with the conditions imposed on him during his sentencing hearing. While this is commendable, compliance is the expectation. *See United States v. Ferrell*, 234 F.Supp.3d 61, 64 (D.D.C. 2021) (full compliance with terms of probation, good behavior, and hope to take advantage of career advancement opportunities did not warrant early termination of probation); *United States v. Sutton*, 4:19-MJ-1146-RJ, 2021 WL 1807261 at *3 (collecting cases). Mere compliance is not sufficiently compelling to warrant a sentence reduction.

As discussed above, Conover also contends that early termination is warranted because due to his probationary status, he is unable to train his adult dogs. The court has already had the opportunity to consider this request, did Consider it as part of its sentencing decision, and at Conover's request, included a specific carve-out for Conover to be able to train his dogs. So why is this inconvenience regarding his inability to use a gun under the Texas Penal Code only being brought to the Court's attention now? What needs to happen in the next seven months in the training of these two dogs that cannot wait until after April 2025?

Any inconvenience or alleged lost training is not an unforeseen circumstance following his conviction for participation in the storming of the United States Capitol nearly four years ago. Conover's challenges vis-à-vis his dogs are self-imposed, and they are expected consequences of the decisions he made on and around January 6, 2021. The full term of probation is necessary to ensure that Conover continues to refrain from engaging in criminal activity.

**B.     Early Termination of Conover's Probation Does Not Serve the Interest of Justice.**

Looking to the sentencing factors under 18 U.S.C. § 3553(a), early termination of probation here would not serve the interest of justice. As to the nature and circumstances of the offense (§ 3553(a)(1)), Conover participated in the January 6, 2021, insurrection and siege of the United States Capitol, a violent event that delayed the certification of the Electoral College. Conover did so after making numerous social media posts and calls to action, post that he downplays as him being a "smart aleck" but ones that echo the violent rhetoric and calls for dangerous, disorderly, and obstructive conduct that were swirling across various media at that time. Despite claiming that he took the trip because he was bored and that his only intent was to eat, drink, and be merry, Conover flew to Washington, D.C., on January 5, 2021, attended the former president's rally, and then walked to the U.S. Capitol, editorializing about his actions, photographing himself behind an AREA CLOSED sign, and admitting that when he does storm the U.S. Capitol, he drinks Coors Light.

As to other sentencing factors—the history and characteristics of the defendant (§ 3553(a)(1)); the need for the sentence to reflect the seriousness of the offense and promote respect for the law (§ 3553(a)(2)(A)); and the need for the sentence to afford adequate deterrence (§ 3553(a)(2)(B)); Judge Pan carefully considered these factors in imposing thirty-six months of probation. Conover's request for a reduction in that period would undercut Judge Pan's balancing

of the § 3553(a) factors after hearing from the government, defense counsel, and Conover at the sentencing hearing. And while none of Conover's actions since his sentencing hearing would justify this Court in revoking or imposing a longer term of probation, nothing he has done should compel this Court to shorten his sentence.

*   *   *

In sum, Conover presents no new information warranting early termination of probation. Judge Pan carefully crafted a sentence of a significant period of probation—thirty-six months—that included conditions to address each of the § 3553(a) factors. Judge Pan also specifically crafted a sentence that included a period of probation that extended through the next presidential election. That was likely deliberate. If this Court is at all inclined to grant Conover's request for early termination, the government urges to Court to not terminate his term of probation any earlier than Tuesday, January 21, 2025. Nonetheless, it remains the government's position that a reduction to a less-than-full term of probation would contravene the interest of justice, especially considering the nature and circumstances of Conover's offense.

[THIS SPACE INTENTIONALLY LEFT BLANK]

**IV.    CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court DENY

Conover's Motion for early termination.

Respectfully submitted,

MATTHEW M. GRAVES
D.C. BAR NO. 481052
UNITED STATES ATTORNEY

By: _____
Sean P. Murphy
New York Reg. No. 5321617
Assistant United States Attorney
U.S. Attorney's Office—District of Puerto Rico
Torre Chardon, Ste 1201
350 Carlos Chardon Avenue
San Juan, PR 00918
787-766-5656
sean.murphy@usdoj.gov